UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW BARILLI AND RONALD PEÑA, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>       vs.<br><br>SKY SOLAR HOLDINGS, LTD., WEILI SU, JIANMIN WANG, YI ZHANG, XIAOGUANG DUAN, HAO WU, DONGLIANG LIN, ROTH CAPITAL PARTNERS, LLC, AND NORTHLAND SECURITIES, INC.,<br><br>                Defendants. | Case No. 17-cv-4572-LTS-DCF<br><br>**REQUEST FOR ORAL ARGUMENT** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RECONSIDERATION OF THE COURT'S
<u>MEMORANDUM OPINION AND ORDER, ENTERED MAY 24, 2019</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................... ii

I.   POST-OPINION PROCEDURAL HISTORY ........................................................................ 3

II.   PLAINTIFFS' MOTION TO RECONSIDER SHOULD BE GRANTED ............................ 4

   A.   The Court Committed Plain Error In Holding that Allegations Concerning Chilean
        Financing Did Not Relate Back to the FAC ................................................................... 5

   B.   The Court Committed Plain Error in Mischaracterizing Defendants' False Statements
        as "Puffery" .................................................................................................................. 10

   C.   The Court Committed Plain Error In Applying *Fries* and Failing to Apply Other
        Controlling Case Law .................................................................................................... 16

   D.   The Court Committed Plain Error in Holding that Disclosure of Meaningless Risk
        Factors Is Sufficient to Cleanse Defendants of Securities Liability ............................. 17

III.  CONCLUSION ................................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017) ..................................................................... 11

*In re BDC 56 LLC*,
  330 F.3d 111 (2d Cir. 2003) ................................................................................... 4

*In re Chaus Sec. Litig.*,
  801 F. Supp. 1257 (S.D.N.Y. 1992) ....................................................................... 9

*Farez- Espinoza v. Napolitano*,
  No. 08 Civ. 11060(HB), 2009 WL 1118098 (S.D.N.Y. Apr. 27, 2009).................... 4

*FDIC v. First Horizon Asset Secs. Inc.*,
  291 F. Supp. 3d 364 (S.D.N.Y. 2018) .................................................................... 8

*Fogel v. Wal-Mart De Mexico SAB De CV*,
  No. 13 Civ. 2282 (KPF), 2017 U.S. Dist. LEXIS 26976 (S.D.N.Y. Feb. 27, 2017) ............. 8, 9

*Fries v. N. Oil & Gas, Inc.*,
  285 F. Supp. 3d 706 (S.D.N.Y. 2018) ............................................................. 16, 17

*In re Gen. Elec. Co. Sec. Litig.*,
  857 F. Supp. 2d 367 (S.D.N.Y. 2012) .................................................................. 10

*Gey Assocs. Gen. P'ship v. 310 Assocs.*,
  346 F.3d 31 (2d Cir. 2003) ................................................................................... 4

*Henderson v. Metro. Bank & Trust Co.*,
  502 F. Supp. 2d 372 (S.D.N.Y. 2007) .................................................................... 4

*Lapin v. Goldman Sachs Grp., Inc.*,
  506 F. Supp. 2d 221 (S.D.N.Y. 2006) .................................................................. 13

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
  939 F. Supp. 2d 360 (S.D.N.Y. 2013) ................................................................. 2, 7

*March-Godreau v. Suny Coll.*,
  2016 U.S. Dist. LEXIS 31449 (N.D.N.Y. 2016) ..................................................... 9

*Meyer v. JinkoSolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014) ............................................................................. 3, 18

*In re Moody's Corp. Sec. Litig.*,
  599 F. Supp. 2d 493 (S.D.N.Y. 2009) .................................................................. 13

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ........................................................................................ 2, 11

*In re Petrobras Sec. Litig.*,
  116 F. Supp. 3d 368 (S.D.N.Y. 2015) .................................................................................. 11

*Pichardo v. Ashcroft*,
  374 F.3d 46 (2d Cir. 2004) ................................................................................................ 4

*SEC v. Merchant Capital, LLC*,
  483 F.3d 747 (11th Cir. 2007) ......................................................................................... 17

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16 Civ. 6728 (CM), 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ................................. 11

*Slayton v. Am. Exp.*,
  460 F.3d 215 (2006).............................................................................................. 5, 8, 18

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
  250 F.3d 87 (2d Cir. 2001) ........................................................................................... 3, 16

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
  162 F.3d 724 (2d Cir. 1998) ............................................................................................ 4

*In re Xinhua Fin. Media Ltd Sec. Litig.*,
  No. 07 Civ. 3994 (LTS)(AJP), 2009 WL 464934 (S.D.N.Y. Feb. 25, 2009)........................... 17

**Rules**

Fed. R. Civ. P. 15(c) ..................................................................................................... 2, 8

Fed. R. Civ. P. 59(e) ......................................................................................................... 1

Fed. R. Civ. P. 60(b) ..................................................................................................... 1, 4

Local Rule 6.3 .................................................................................................................. 1

Defendant Sky Solar Holdings Ltd. ("Sky") completed its initial public offering ("IPO") of 6,353,750 American Depositary Shares ("ADS") at $8 per ADS on November 14, 2014.  *See* Second Consolidated and Amended Class Action Complaint ("SAC," ECF 56), ¶69.[1]  Investors rushed in to invest in the IPO because the Prospectus for the IPO misrepresented Sky's "proven track record," access to financing, and most of all, extolled Sky's Founder, Chairman and CEO Weili Su's success as a businessman – of paramount importance to investors given Su's role as the driving force behind Sky.

Sky's common stock closed on June 16, 2017, when the initial complaint was filed, at $1.38 per ADS, and closed on June 6, 2019 at $0.55 per ADS.  Investors lost 93.125% of their investment as the market learned that, in fact, Su was a crook and had openly stolen money from investors and third parties.  Further, markets where Sky intended to develop solar assets, and Sky's purported access to financing sources, either did not exist or failed as a result of circumstances known at the time of the IPO.

Notwithstanding the evident merits of this Action, this Court, on May 24, 2019 entered its Memorandum Opinion and Order, dismissing the SAC ("Opinion" or "Op.," ECF 99).

Plaintiffs, with knowledge of the very high bar for motions for reconsideration, and with deference and appreciation for the Court's careful consideration of the Parties' prior submissions, respectfully submit that the following grounds exist for reconsideration pursuant to Local Rule 6.3 and Federal Rule of Civil Procedure 59(e) and 60(b) -- that the Court committed clear error in holding that:

1. Allegations in the SAC concerning Sky's Chilean financing, alleged in support of Plaintiffs' existing Section 11 and Section 12(a)(2) claims and addressed to the Prospectus and other SEC filings that were already the subject of the (First)

---

[1] Unless otherwise noted, all references to "¶__" are to the paragraphs of the SAC.

Consolidated Amended Class Action Complaint ("FAC"; ECF 34), did not relate back to the FAC.  Op. at 42-44.

Rather, the SAC asserts no new causes of action nor does it seek to extend any class period. It only asserts additional factual basis for existing claims already filed under the Securities Act of 1933.  Those allegations relate back to the FAC and do not violate the statute of repose.  *See* Fed. R. Civ. P. 15(c)(1)(B).  The Court's reliance on *In re Longtop Financial Technologies Ltd. Securities Litigation*, 939 F. Supp. 2d 360, 379-80 (S.D.N.Y. 2013) (Op. at 44) was unwarranted, because there the plaintiff sought to extend back the class period to revive time-barred claims.

2.  Statements concerning Su's success and business acumen, and Sky's "proven track record" and access to financing, were mere puffery that no reasonable investor could rely on.  Op. at 22-23 and 36-37.

Rather, Sky, at the time of the IPO, was a Chinese company little known in the United States.  The positive Prospectus statements concerning Sky and Su conveyed specific, meaningful facts that were intended to and did induce investors to purchase Sky common stock.  The Court overlooked controlling precedent.  *See Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000), and other cases cited *infra* at 10-11 and 13.

3.  Defendants[2] had no obligations to disclose that Su was a crook and that statements in the Prospectus concerning Su were not materially false and misleading and did not warrant the disclosure of other true facts concerning Su's past.  Op. at 20-24.

Su was the Founder, Chairman, CEO, and controlling shareholder of Sky.  His history of indebtedness and unlawfulness was material to investors and necessary to make the positive

---

[2] All references to "Defendants" are to each of the Defendants named in the SAC.  Sky's counsel in this action initially refused to accept service on individual defendants Weili Su, Yi Zhang, Xiaoguang Duan, Hao Wu, and Dongliang Lin, requiring plaintiffs to seek to serve defendants under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention").  *See* ECF 62.  As Plaintiffs anticipated, those efforts failed, and ultimately Judge Freeman authorized plaintiffs to serve these individual defendants through substituted service on Sky's counsel.  *See* ECF 86.

statements in the Prospectus not materially false and misleading.  *See Suez Equity Investors, L.P.*

*v. Toronto-Dominion Bank*, 250 F.3d 87, 94, 96-99 (2d Cir. 2001).

4. Risk factors disclosed in the Prospectus and other SEC filings were "meaningful,"
   when most of the material facts necessary to evaluate the risk factors in context were
   either omitted from the Prospectus and other SEC filings or misrepresented.  Op. at 36-
   40.

The risk factors were not meaningful because Defendants either misrepresented or omitted

material facts necessary for investors to evaluate those risk disclosures.  *Meyer v. JinkoSolar*

*Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014).

Accordingly, Plaintiffs' motion for reconsideration should be granted.

As noted below, Plaintiffs are also in the process of proposing amendments to the SAC,

and those amendments are likely to implicate at least points 3 and 4 above.

# I.     **POST-OPINION PROCEDURAL HISTORY**

Just this week, Plaintiffs learned that on January 29, 2019, three former minority

shareholders of a predecessor to Sky (the "Defrauded Shareholders") filed a Petition to Confirm

Arbitration Award against Su in the Southern District of New York (the "Petition").  *See Fei v. Su*,

19-cv-00893 (*Fei* ECF 1).  The Arbitration Award (*Fei* ECF 4-1) was not publicly available prior

to its filing with the District Court.

In the Arbitration Award, the Tribunal found that prior to the Sky IPO, Su caused the

predecessor of Sky to transfer all its business operations to Sky, after which Su caused Sky to go

public; that such actions breached a Shareholders Agreement between, among others, Su and the

Defrauded Shareholders; and that the Defrauded Shareholders were not given notice of Sky's

formation, and were left as minority shareholders of a worthless shell company.  The Tribunal

concluded that Su's "motive in excluding the Claimants from the 2013 Share Swap and the 2014

[Sky] IPO was to enrich his own position and deprive the Claimants of their rights." *Id.* at ¶167. The Defrauded Shareholders were awarded damages of approximately $12.5 million.

Plaintiffs, on June 6, 2019, sought permission from Judge Freeman for a one week extension of time to move for reconsideration of the Court's May 24, 2019 Opinion and for permission to amend the SAC. Plaintiffs preferred not to move the Court piecemeal and requested the one week extension to integrate the new facts learned from the Petition and Award into the SAC. However, since Judge Freeman only granted the extension of time to move for permission to amend the SAC, a motion to amend will follow next week.

II.    **<u>PLAINTIFFS' MOTION TO RECONSIDER SHOULD BE GRANTED</u>**

A motion for reconsideration is appropriate to correct errors of law or fact. *See In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003); *Gey Assocs. Gen. P'ship v. 310 Assocs.*, 346 F.3d 31, 34-35 (2d Cir. 2003); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998); *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 375-76 (S.D.N.Y. 2007).

"Reconsideration [under Rule 59(e)] is justified by, among other factors, the need to correct a clear error or prevent manifest injustice.'" *Henderson*, 502 F. Supp. 2d at 376 (citation omitted).

Under Rule 60(b), a court may vacate or modify an order on the grounds of "mistake, inadvertence, surprise or excusable neglect; newly discovered evidence; fraud, misrepresentation or other misconduct; judgment is void; judgment is satisfied, released or discharged; or any other reason that justifies relief." *Farez- Espinoza v. Napolitano*, No. 08 Civ. 11060(HB), 2009 WL 1118098, at *3 (S.D.N.Y. Apr. 27, 2009). The Second Circuit has described Rule 60(b) as "a grand reservoir of equitable power to do justice in a particular case." *Pichardo v. Ashcroft*, 374 F.3d 46, 55-56 (2d Cir. 2004).

A.     **The Court Committed Plain Error In Holding that Allegations Concerning Chilean Financing Did Not Relate Back to the FAC**

The Court sustained on the merits Plaintiffs' claims that Sky misrepresented that it had "secured" financing to build out Chilean solar assets (Op. at 34-36), but dismissed those claims on the basis of the statute of repose on grounds that the allegations with respect to Chilean financing were first made in the SAC filed more than three years after Sky's IPO. *See* Op. at 42-44.

Reconsideration should be granted for three reasons. ***First***, Defendants did not argue in their motion to dismiss the SAC that the Chilean financing claim was barred by the statute of repose. They only argued that that plaintiffs' allegations concerning "Sky Solar's Spanish operations," "broad geographic reach," and "reason for converting to an IPP business model," were "barred under the Securities Act statute of repose." ECF 67 at 16. Thus, the issue was neither raised nor argued by Defendants. *See Slayton v. Am. Exp.*, 460 F.3d 215, 230 (2006) ("The failure to raise the specific statute of limitations defense … in the district court waives this defense.").

***Second***, the FAC, which was filed on November 9, 2017, within the three year statute of repose, contained allegations of materially false and misleading statements and omissions in the Prospectus concerning Sky's access to financing and ability to develop markets, including Chile (ECF 34 at ¶¶152-88). For example, the FAC alleged the following:

45. At the time of the November 13, 2014 IPO, Sky Solar had "developed projects in Asia, South America, Europe, North America, and Africa," and aimed "to establish operations in Japan, *Chile*, Uruguay, and other select geographies," which it claimed in the Prospectus had "*highly attractive* solar radiation, regulatory environment, power pricing, land availability, *financial access* and overall power market trends." *Id.* at 1 and 100. [Emphasis added.]

50. The Prospectus further represented that as of the date of the Prospectus, Sky Solar had 22.6 MW of solar parks under construction, 257.1 MW of shovel-ready projects and 1,053.3 MW of solar parks in pipeline in nine countries. *Id.* at 100. Out of the 257.1 MW of shovel-ready projects, the Company had 155.7 MW; 44.0 MW; and 63.2 MW "of shovel-ready projects *ready to be developed upon receipt of funding*" in Japan, *Chile* and Uruguay, respectively. *Id.* at 102. [Emphasis added.]

5

113. Throughout the Prospectus, Defendants repeatedly represented that Japan was a highly favorable market for Sky Solar, in particular because of its high FIT rates. Indeed, in the very beginning of the Prospectus ("Prospectus Summary" – "Our Business" – "Overview"), Defendants stated:

> We aim to establish operations in Japan, Chile, Uruguay and other select geographies with highly attractive solar radiation, regulatory environments, power pricing, land availability, financial access and overall power market trends. [Prospectus, at 100; emphasis added.]

154. The Prospectus stated (at 1): "We aim to establish operations in Japan, Chile, Uruguay and other select geographies with highly attractive solar radiation, regulatory environments, power pricing, land availability, *financial access* and overall power market trends." Emphasis added. The Company further represented, that it "intend[ed] to leverage our established pipeline projects and *increased financing capabilities* to expand our IPP business." *Id.* [Emphasis in FAC.]

156. In respect to the Company's *ability to obtain financing*, the Prospectus specifically represented, "We have access to a variety of financing sources and a demonstrated ability to design cost-effective project funding solutions. We are well positioned to create efficient financing solutions that are responsive to local regulatory conditions and financial markets." Further, the Prospectus represented that Sky Solar's "global reach and extensive relationships provide access to a variety of financing solutions from various geographies" and that Sky Solar is "well positioned to create efficient financing solutions that are responsive to local regulatory conditions and financial markets." *Id.* at 1-2. The Company represented that it has "extensive experience in financing large-scale solar parks, minimizing investment risks, optimizing capital structure and maximizing returns for each solar park…. We utilize a broad range of financing structures, tailored to the risks and opportunities of solar parks in each market, including project funding, equity financing, through affiliates and pre-financing agreements with off-takers." *Id.* at 104.

172. The Prospectus misrepresented that Sky Solar *had the financial commitments to grow out its "shovel-ready projects" and had access to financing to pursue its "advanced and qualified projects*." In truth, Sky Solar lacked that ability because of the diminished IPO proceeds, changes in the Japanese regulatory environment, and lack of outside financing. Defendants failed to disclose the known trend and uncertainty that Sky Solar *did not have financial commitments to advance its "shovel-ready projects" and "advanced and qualified projects*." [Emphasis added.]

173. The Prospectus stated (at 1 and 100) that "[i]n addition to our existing operational project portfolio, we have *over 1.3 GW of solar projects in various stages of development in countries such as Chile*…" [Emphasis added.]

190. Defendants represented in the Prospectus that Sky Solar had 44.0 MWs of shovel-ready projects, and "154.0 MW of advanced pipeline and 319.0 MW of other solar parks in our pipeline" in Chile. Prospectus at 114. The Prospectus "classif[ied] 341.0 MW of

6

these [pipeline] solar projects as advanced and qualified which we expect to become shovel-ready within 12 to 18 months."

191. *Contrary to these representations in the Prospectus, Chile did not represent a "core growth area" based on* "highly attractive solar radiation, regulatory environments, power pricing, land availability, *financial access* and overall power market trends." Prospectus at 1.... [Emphasis added.]

Therefore, the SAC's allegations concerning Chilean financing are not new claims (or subject areas), but additional allegations that elaborate on these earlier, timely filed, FAC claims. As such, the SAC's allegations are timely and are not barred by the statute of repose.

However, this Court dismissed the Chilean financing claim in the SAC on the basis of the statute of repose. In support, the Court cited *Longtop*, 939 F. Supp. 2d at 379-80, for the proposition that "an amendment to a complaint filed after the expiration of the repose period, adding allegations that additional audit opinions provided a basis for additional representations, was barred." Op. at 44. However, *Longtop* did not address the specific issue of adding allegations in support of existing timely filed claims. Rather, in *Longtop*, the party seeking to amend the complaint had sought to extend the class period back to include investors whose claims were otherwise time barred under the statute of repose. 939 F. Supp. 2d at 366 ("[t]he Amended Complaint adds allegations based on audit opinions of DTTCs that were publicized on October 24, 2007 and July 1, 2008, thereby lengthening the class period."). That is not the case here.

**Third**, the allegations concerning Chilean financing appear in the SAC in separate sections concerning Chile (¶65), Sky's ability to develop markets (¶209), and Sky's access to financing (¶¶225 and 237). These allegations derive from the materially false and misleading Prospectus for the IPO and other (primarily annual) SEC filings. Claims concerning those materially false and misleading statements were timely filed in the FAC and the SAC, and as such the allegations should relate back to the FAC, which raised these issues as set forth above.

7

In addressing the statute of repose, this Court acknowledged that the words of the statute (15 U.S.C. §77m) precluded only the bringing of an "action … more than three years after the securities was bona fide offering to the public," and not amending allegations in an existing "action," and that most of the cases applying the statute of repose concerned either new actions or new causes of action (such as 15 U.S.C. §77l(2)) within an existing action.  *See* Op. at 43 (citing *FDIC v. First Horizon Asset Secs. Inc.*, 291 F. Supp. 3d 364, 369-72 (S.D.N.Y. 2018)).

Significantly, Fed. R. Civ. P. 15(c) provides, "An amendment to a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  There is no separate standard under Rule 15 for a statute of repose versus a statute of limitations.  As the Second Circuit has explained:

> The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities. For a newly added action to relate back, the basic claim must have arisen out of conduct set forth in the original pleading. Under Rule 15, the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading. Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs.

*Slayton,* 460 F.3d at 228 (citations and internal quotation marks omitted) (holding among other things (at 229) that "the allegations in the amended complaint … simply provide a more detailed description of allegations made in the original complaint.").

Again, to the extent the plain language of Section 77m supersedes Rule 15, it only bars the relation back of a new "action," not additional facts in support of an existing action and cause of action.

Judge Failla addressed this issue more recently in *Fogel v. Wal-Mart De Mexico SAB De CV*, 13 Civ. 2282 (KPF), 2017 U.S. Dist. LEXIS 26976 (S.D.N.Y. Feb. 27, 2017) and reached a

result consistent with *Slayton*.  In *Fogel*, the plaintiff sought to amend the complaint to allege additional claims with respect to Annual Reports that plaintiff "alleged in his original Complaint … contained material misrepresentations."  *Id.* at *23.  The Court denied defendants' motion to dismiss on grounds that "the Court cannot say with confidence that Plaintiff's broader challenges in the original Complaint to Wal-Mex's annual reports were not intended to encompass his later, more specific challenges to the letters therein."  *Id.* at *23.  *See also March-Godreau v. Suny Coll.*, 2016 U.S. Dist. LEXIS 31449, at *13 (N.D.N.Y. 2016) ("While Plaintiff's new allegation recounts a separate transaction from the allegations in the original Complaint, it is sufficiently connected to the allegations in the original Complaint to relate back.") (citing *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (finding that new allegations regarding manipulations of accounts receivable were offshoot of basic scheme to defraud investors by misrepresenting company's profitability))."

Reconsideration is especially necessary because of the significance of the Court's decision in cases brought under the Private Securities Litigation Reform Act ("PSLRA").  Given the time required under the PSLRA to (i) file an initial class action complaint, (ii) give class members 60 days to file motions for lead plaintiff, (iii) decide the lead plaintiff motions, (iv) allow the lead plaintiff to file a consolidated, amended complaint, and (v) allow defendants to move to dismiss that complaint, the parties to brief that motion, and the Court to decide that motion, it is the rare Section 11 claim that will begin discovery much, if at all, before the expiration of the statute of repose.  Thus, the strict application of the statute of repose will almost always encourage defendants' dilatory conduct and preclude plaintiffs from shaping the contours of a complaint through discovery.

Accordingly, Plaintiffs respectfully seek reconsideration of the Court's dismissal based on the statute of repose.

**B.    The Court Committed Plain Error in Mischaracterizing Defendants' False Statements as "Puffery"**

This Court dismissed the following allegations that the Prospectus misrepresented material facts as "puffery":

1.  Su was a "successful businessman."  See Op. at 22 ("The general positive statements about Su's professional history and management abilities, such as statements that he was a 'successful businessman,' are at most non-actionable puffery.");

2.  Sky had a "proven track record ... operating under local conditions."  Op. at 23 ("These challenged statements constitute puffery in that they are vague statements that no reasonable investor would rely upon.");

3.  Sky had "broad geographic reach and established presence across key solar markets" as well as "established pipeline projects."  Op. at 36.  ("The Court agrees that no reasonable investor would read statements about Sky's purportedly global presence as describing a certain minimum presence in a threshold number of countries, and in fact, despite Sky's allegedly reduced operations, Plaintiffs do not allege that Sky's operations became strictly local to one geographic area."); and

4.  "Plaintiffs allege that Sky made several statements that misleadingly represented that Sky had access to financing to build out its solar projects.  [¶¶222-38.]  These statements are not actionable, however, because they constituted forward-looking statements accompanied by appropriate cautionary language, and/or were puffery."  Op. at 36-37.

These statements are clearly not puffery.  As the Court stated in the Opinion at 19, "Puffery is 'an optimistic statement that is so vague, broad, and non-specific that a reasonable investor would not rely on it, thereby rendering it immaterial as a matter of law'" (quoting *In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 384 (S.D.N.Y. 2012)).

Here, the only reason the challenged statements were in the Prospectus was to induce reliance and investment in the IPO.

Statements are inactionable "puffery" only if "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."  *In re Banco*

*Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 646 (S.D.N.Y. 2017). *See also Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (general statements that inventory was "in good shape" and "under control" actionable); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) (statements might be mere puffery when "viewed in isolation," but viewed in context could lead reasonable investors to rely on them as reflecting company's "true state of affairs").

As recently reiterated by Chief Judge McMahon, even if arguably puffery when viewed in isolation, "[if] made repeatedly in an effort to reassure the investing public about matters particularly important to the company and investors, those statements may become material to investors." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 6728 (CM), 2018 WL 6167889, at *11 (S.D.N.Y. Nov. 26, 2018).  As noted below (at 14-15), false statements concerning access to financing, among other things, were made repeatedly in the Prospectus.

Sky is a Chinese solar company, which, at the time of the IPO, had no business operations in the United States.  Sky had no media coverage in the United States, and the only information known about Sky to investors was information disseminated in the Prospectus.  The whole point of the Prospectus was to inform investors concerning Sky.  Because Sky is a Chinese company, the Prospectus warned shareholders (at 42) that "you may face difficulties in protecting your interests and your ability to protect your rights through the U.S. Federal Courts may be limited." The Prospectus then repeatedly reassured investors with references to Su's business integrity and acumen.

Thus, far from being puffery, the absence of judicial process in China caused defendants' false statements in the Prospectus concerning Su's integrity and acumen to have actual significance to investors.  Those false Prospectus statements included the following:

11

1. Su was "a successful businessman" and "was the founder of our company and has been our director and executive chairman since October 2009" and "is primarily responsible for our strategic planning, business operation and overall management."  ¶79.

2. The "industry experience, expertise and contributions of our executive chairman, Mr. Weili Su are essential to our continuing success." *Id.,* ¶80.

3. "We are led by a highly experienced management team supported by strong, localized execution capabilities across all key functions and locations." *Id.*, ¶81.

4. Our management team has a broad range of experience, an in-depth understanding of the ever-changing global PV industry, proven market insights and a track record of successful execution. Our senior management has extensive experience in both upstream and downstream PV markets. Our founder and executive chairman, Mr. Weili Su, has over 13 years of business experience in the PV industry. He is a pioneer in the downstream PV market and spearheaded the PV project development business in 2005. ¶81.

In this vein, facts concerning (i) Su's efforts to avoid creditors, (ii) shifting assets and revenue to related businesses, (iii) failure to honor share ownership, and (iv) $44 million in unsatisfied judgments, would have been material to a reasonable investor.  Among the allegations supporting this claim are that (i) at the time of the IPO, Su had $44 million of unsatisfied civil indebtedness (¶¶77 and 92), (ii) Su was ordered by the Shanghai First Intermediate People's Court not to spend money on "high value consumptions," not necessary for personal life and work, until he satisfied those judgments (¶93), Su orchestrated the sale of Sky's common stock in Sky Solar Deutschland GmbH ("Deutschland") to defraud creditors (¶¶94-100), (iv) Su stole corporate opportunities from Deutschland (¶¶101-06), (v) Su procured prostitutes to cause third parties to invest in Sky (¶106), (vi) business reversals in Spain (¶¶142-49) and (vii) Su cheated third parties out of their equity interests in Sky prior to the IPO (¶107).  Su's conduct prior to the IPO foreshadowed his theft of corporate assets in 2017 (¶¶109-17) and a self-interested related party transaction in 2016 (¶¶118-20).

The Court (at 22) speculates that the Prospectus's positive statements concerning Su and the absence of contrary "information relating to Su's past alleged misdeeds" would not "lead a

reasonable investor to conclude" that "Su did not engage in past improper transactions."  Op. at 22-23.  There is nothing in the record to support that finding.  The IPO was underwritten by two U.S. underwriters charged with due diligence obligations, and the Registration Statement was filed by two U.S. law firms.  Absence contrary evidence, a reasonable investor would expect the Prospectus to disclose Su's "past improper transactions."

Put another way, we would likely all agree that to introduce Bernard Madoff to a prospective investor as a "successful businessman" with a "proven track history" is misleading if not qualified by stating that he is also the world's largest Ponzi-schemer.  To say that Su (although less notorious than Madoff) was a "successful businessman" with "a proven track record" is no less misleading.

Thus, the Court (Op. at 20-24) committed plain error when holding that statements in the Prospectus made to assure investors of Su's integrity and acumen were not materially false or misleading.  *See  Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 240 (S.D.N.Y. 2006) (rejecting argument that statements about defendant Goldman's integrity and independence were "mere puffery," where Goldman represented its integrity "was at the heart" of its business and its "truly independent investment research" allegedly distinguished it from competitors); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 509 (S.D.N.Y. 2009) (representation that defendant's "independence" was "a cornerstone of its business" not puffery).

By dismissing complaints like this, courts run the risk that clever fraud-doers will excise word-bites from Sky's Prospectus, issue shares of companies that either should not have gone public, at all, or are very different than they are made to appear to investors, and then cite back to courts this Court's holding that, as a matter of law, no reasonable investor would have relied on

false statements of fact in the prospectus.  The Sky Prospectus will become the template for every fraudulent company that goes public.

In the same way that Su's integrity and acumen were material to investors in the IPO, the defendants' statements in the Prospectus concerning Sky's access to financing – a critical issue, especially to a newly-public company – were not "puffing," but were material statements that investors were entitled to rely on in making an investment in the Sky IPO.  Sky initially sought to raise $121.9 million from the IPO, but ultimately raised only $46.1 million, leaving a $75.8 million shortfall.  Significantly, the Court acknowledged that the "hole" left from the failed IPO was required to be filled by third party financing:

> The fact that the final IPO resulted in a reduced amount of cash on hand for investments supports the simple inference that Sky intended to accomplish the same development goals by increasing its reliance on loans and on financing from other sources.  [Op. at 39]

The statements in the Prospectus were very specific as to Sky's ability to raise financing and expand operations:

1. In light of these favorable conditions and our increased access to financing, we will continue to increase the proportion of solar parks that we own and operate as IPP solar parks.  ¶165.

2. Sky had a "broad geographic reach and established presence across key solar markets are significant differentiators that provide global opportunities and mitigate country-specific risk."  ¶205.

3. "We intend to leverage our established pipeline projects and increased financing capabilities to expand our IPP business."  ¶206.

4. Sky had a "proven track record … operating under local conditions, developing local relationships and managing a global platform."  ¶207.

5. "We aim to establish operations in Japan, Chile, Uruguay and other select geographies with highly attractive solar radiation, regulatory environments, power pricing, land availability, financial access and overall power market trends." ¶222.

6. "We intend to leverage our established pipeline projects and increased financing capabilities to expand our IPP business." ¶222.

7. "We have access to a variety of financing sources and a demonstrated ability to design cost-effective project funding solutions. We are well positioned to create efficient financing solutions that are responsive to local regulatory conditions and financial markets."  ¶223.

8. Sky's "global reach and extensive relationships provide access to a variety of financing solutions from various geographies."  *Id.*

9. Sky is "well positioned to create efficient financing solutions that are responsive to local regulatory conditions and financial markets."  *Id.*

10. "We have extensive experience in financing large-scale solar parks, minimizing investment risks, optimizing capital structure and maximizing returns for each solar park…. We utilize a broad range of financing structures, tailored to the risks and opportunities of solar parks in each market, including project funding, equity financing, through affiliates and pre-financing agreements with off-takers." *Id.*

11. "In light of these favorable conditions and our increased access to financing, we will continue to increase the proportion of solar parks that we own and operate as IPP solar parks."  ¶224.

12. For certain markets "such as Eastern Europe, Latin America and other emerging markets," the Company seeks "to arrange debt financing by leveraging our strong relationships with international financing sources. We have also established affiliates with other entities who provide financing or guarantees to the affiliate to assist with long-term debt financing."  *Id.*

Significantly, the Prospectus (i) failed to disclose the true facts that Sky "lacked the ability to obtain financing for markets saturated with solar assets, such as Japan and Chile, and had only been able to obtain financing at adverse terms" (¶225), (ii) "failed to disclose Sky Solar's lack of access to bank financing as a result of the Spanish and Czech debacles" (¶¶148-49, 225), (iii) "failed to disclose the unwillingness of vendors to provide financing" (*id.*),  and (iv) misrepresented that it had a mandate for financing construction in Chile" (¶237).  Defendants also failed to disclose Su's history of theft and indebtedness, which would have dissuaded creditors from lending Sky money.  ¶¶77, 92, 96 and 99.

As such, the Prospectus's statements concerning statements such as Su's "success" and Sky's "proven track record" and "increased access to financing" are not puffery and are actionable.

15

### C.   The Court Committed Plain Error In Applying *Fries* and Failing to Apply Other Controlling Case Law

Under governing precedent, when Defendants chose to discuss Su's business background, they had an obligation to make their statements true and complete.

Specifically, in *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, the defendant omitted "negative events in [the principal's] business and financial history," including bankruptcy and civil suits, "three tax liens against" him, "several lawsuits that had been decided against" him, and "his delinquent credit accounts." 250 F.3d at 94, 96-99. The Second Circuit stated that "the defendant allegedly concealed a lack of skills and expertise on the part of the company's principal that, if revealed, would directly affect the plaintiffs' valuation of their investment in the company." *Id.* at 98.

Rather than follow this controlling precedent, the Court cited to *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706 (S.D.N.Y. 2018). *See* Op. at 21. However, the Court failed to accurately apply *Fries.* Thus, (i) Sky put "the reasons for its success at issue, but fail[ed] to disclose that a material source of its success is [Su's] improper or illegal business practices," (ii) Sky made statements in the Prospectus with respect to a "threatening email" and in the Form 20-Fs with respect to the arbitration claim, which were subsequently found to have overwhelming merit, while at the same time it "den[ied] that the illegal conduct … occurr[ed],"[3] and (iii) Sky stated an opinion as to Su's success as a businessman and Sky's success as a business, while at the same time "mislead[ing] investors about material facts underlying that belief." Sky's "statements" concerning Su therefore "did … amount to a denial of illegal conduct," and would be actionable under *Fries. See id.* at 719.

---

[3] This claim will be further developed in the proposed TAC.

Further, *Fries* is distinguishable in that it concerned allegations that defendants failed to disclose the CEO's misconduct in an unrelated second public company. As the two companies were "wholly unrelated," the court held "that there is no inherent conflict," and plaintiffs failed to show that the defendant corporation "did not rely on [his] knowledge and expertise in the industry" in which it was part. 285 F. Supp. 3d at 712, 719, 721 n.6.  Although the Court is correct (Op. at 23) that much of the discussion that Plaintiffs rely on in *Fries* concerns scienter, rather than falsity, the point remains that the severity of Defendant Reger's conduct in *Fries* pales against Su's conduct here, especially when the additional allegations from the arbitration award are considered. *See also SEC v. Merchant Capital, LLC*, 483 F.3d 747, 770 (11th Cir. 2007) ("a reasonable investor would have been interested in Wyer's previous personal bankruptcy, and that it was thus materially misleading to omit the information") (emphasis in original).

*In re Xinhua Finance Media Ltd Securities Litigation*, No. 07 Civ. 3994 (LTS)(AJP), 2009 WL 464934, at *7-8, n. 5 (S.D.N.Y. Feb. 25, 2009), cited Op. at 22, is also distinguishable.  The Prospectus in *Xinhua* did not tout any individual member of senior management and only contained brief biographies of the individual defendants.  Moreover, the misconduct in *Xinhua* concerned primarily the operations of *other* companies, and not profits from direct dealings with Xinhua.

### D.     The Court Committed Plain Error in Holding that Disclosure of Meaningless Risk Factors Is Sufficient to Cleanse Defendants of Securities Liability

Nor is Defendants' liability insulated by disclosure of risk factors.  Defendants failed to disclose material facts with respect to Su, including his indebtedness, his defrauding creditors of the Sky German subsidiary, and the loss of business assets in Spain, which substantially increased the risk that Sky would be unable to raise financing to build out its solar network.  Significantly, the Court cited to the Prospectus at 16-17 quoting the risk factor that "external financing is subject

to a number of uncertainties, including … the continued confidence of banks and other financial institutions in … [Sky] and the PV industry." Op. at 12. In fact, "banks and other financial institutions" did *not* have "confidence" in Sky. Accordingly, the mere disclosure of risk that Sky *may* not be successful in raising financing (something facing every business, from a lemonade stand to an international conglomerate), was not a meaningful risk disclosure.

Any cautionary statements had to be meaningful, and the manifold misrepresentations and omissions of fact in the Prospectus made the accompanying Risk Factors meaningless. Without knowledge of the true facts, investors had no way to assess the likelihood of any of the risks. *See Meyer*, 761 F.3d at 250; *Slayton*, 604 F.3d at 772.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Plaintiffs' motion for reconsideration be granted.

Dated: June 7, 2019             Respectfully submitted,
      New York, New York

                                    **WOLF POPPER LLP**

                                    */s/ Robert C. Finkel*
                                    Robert C. Finkel
                                    Andrew E. Lencyk
                                    Joshua W. Ruthizer
                                    845 Third Avenue, 12th Floor
                                    New York, New York 10022
                                    Tel: (212) 759-4600
                                    Fax: (212) 486-2093
                                    rfinkel@wolfpopper.com
                                    alencyk@wolfpopper.com
                                    jruthizer@wolfpopper.com

                                    *Attorneys for Plaintiffs and Lead Counsel for the Proposed Class*