**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANDREW BARILLI AND RONALD PEÑA, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　　vs.<br><br>SKY SOLAR HOLDINGS, LTD., WEILI SU, JIANMIN WANG, YI ZHANG, XIAOGUANG DUAN, HAO WU, DONGLIANG LIN, ROTH CAPITAL PARTNERS, LLC, AND NORTHLAND SECURITIES, INC.,<br><br>　　　　　　　Defendants. | <u>**Case No. 17-cv-4572-LTS-DCF**</u> |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT</u>**

**WOLF POPPER LLP**
Robert C. Finkel
Andrew E. Lencyk
Joshua W. Ruthizer
845 Third Avenue, 12th Floor
New York, New York 10022

*Attorneys for Lead Plaintiff and Lead Counsel for the Class*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 3

LEAVE TO AMEND SHOULD BE GRANTED ......................................................... 3

    A.   Leave to Amend Standards ................................................................................. 3

    B.   The Proposed Amendment Is Not Futile ........................................................... 4

    C.   The Proposed Amendments Do Not Unfairly Prejudice Defendants .............................. 12

    D.   The Proposed Amendments Are Timely and Sought in Good Faith ................................. 13

CONCLUSION .............................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AEP Energy Servs., Gas Holding Co. v. Bank of Am., N.A.*,
   626 F.3d 699 (2d Cir. 2010) .......................................................................................... 4

*Bekker v. Neuberger Berman Inv. Comm.*,
   No. 16 CV 6123-LTS, 2019 U.S. Dist. LEXIS 79149 (S.D.N.Y. May 9, 2019) ...................... 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 4

*Block v. First Blood Assocs.*,
   988 F.2d 344 (2d Cir. 1993) ..................................................................................... 12, 13

*Care Envtl. Corp. v. M2 Techs. Inc.*,
   No. 05 CV 1600, 2006 U.S. Dist. LEXIS 55066 (E.D.N.Y. Aug. 7, 2006) ............................ 12

*Esposito v. Deutsche Bank AG*,
   No. 07 Civ. 6722 (RJS), 2008 U.S. Dist. LEXIS 101460 (S.D.N.Y. Dec. 16, 2008) ............... 4

*Foman v. Davis*,
   371 U.S. 178 (1962) ...................................................................................................... 3

*Fries v. N. Oil & Gas, Inc.*,
   285 F. Supp. 3d 706 (S.D.N.Y. 2018) ......................................................................... 2, 9

*Henriquez v. Kelco Landscaping*,
   299 F.R.D. 376 (E.D.N.Y. 2014) .................................................................................. 4

*Hutter v. Countrywide Bank, N.A.*,
   41 F. Supp. 3d 363 (S.D.N.Y. 2014) ............................................................................ 12

*Kroshnyi v. U.S. Pack Courier Servs., Inc.*,
   771 F.3d 93 (2d Cir. 2014) ........................................................................................... 4

*Ochei v. All/Care Onward Healthcare*,
   No. 07 Civ. 0968 (PKC), 2009 U.S. Dist. LEXIS 28993 (S.D.N.Y. Mar. 31, 2009) ............... 4

*Park v. FDM Grp, Inc.*,
   No. 16-CV-1520-LTS, 2018 U.S. Dist. LEXIS 146191 (S.D.N.Y. Aug. 28, 2018) ................. 3

*In re Petrobras Sec. Litig.*,
   116 F. Supp. 3d 368 (S.D.N.Y. 2015) ........................................................................... 9

*Ricciuti v. N.Y.C. Transit Auth.*,
   941 F.2d 119 (2d Cir. 1991) ......................................................................................... 4

*Richardson Greenshields Secs., Inc. v. Lau*,
  825 F.2d 647 (2d Cir. 1987) ........................................................................................ 3

*Ruotolo v. City of N.Y.*,
  514 F.3d 184 (2d Cir. 2008) ...................................................................................... 12

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16 Civ. 6728 (CM), 2018 U.S. Dist. LEXIS 199809 (S.D.N.Y. Nov. 26, 2018),
  *motion for judgment on the pleadings denied*, 2019 U.S. Dist. LEXIS 97959 (S.D.N.Y. June
  11, 2019)...................................................................................................................... 11

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010) ...................................................................................... 10

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*,
  246 F.R.D. 143 (E.D.N.Y. 2007) .......................................................................... 12, 13

*State Teachers Ret. Bd. v. Fluor Corp.*,
  654 F.2d 843 (2d Cir. 1981) ..................................................................................... 3, 13

*Suez Equity Investors, L.P. v. The Toronto-Dominion Bank*,
  250 F.3d 87 (2d Cir. 2001) .................................................................................. 6, 7, 10

*In re Xinhua Fin. Media Ltd. Secs. Litig.*,
  No. 07 Civ. 3994 (LTS) (AJP), 2009 U.S. Dist. LEXIS 14838 (S.D.N.Y. Feb. 25, 2009) ........ 7

**Statutes**

15 U.S.C. §77k ............................................................................................................ 4

15 U.S.C. §77o ............................................................................................................ 4

15 U.S.C. §78j ............................................................................................................. 4

15 U.S.C. §78t ............................................................................................................. 4

**Rules**

17 C.F.R. 240.10b-5 ..................................................................................................... 5

Fed. R. Civ. P. 15(a)(2) ............................................................................................... 3

Fed. R. Civ. P. 9(b) ...................................................................................................... 5

iii

## PRELIMINARY STATEMENT

Plaintiffs seek leave to file a Third Consolidated Amended Class Action Complaint ("TAC") to plead additional allegations primarily concerning Defendant Weili Su's dishonesty. These additional allegations are relevant to the falsity of Defendants' public statements in the Registration Statement and Prospectus for Sky Solar Holdings, Ltd. ("Sky")'s November 13, 2014 initial public offering ("IPO") of American Depositary Shares ("ADS"), and in the after-market. This information only became available after Plaintiffs filed their February 16, 2018 Second Amended Class Action Complaint (ECF No. 56, the "SAC").

Specifically, on May 25, 2018, a unanimous three-person Hong Kong Arbitration Tribunal rendered a Final Award of approximately $12.5 million against Defendant Weili Su, concluding that in 2013 and 2014 Su defrauded three former Sky minority shareholders (the "Minority Shareholders") of their investment interest in Sky (the "Final Award"). In the November 13, 2014 Prospectus ("Prospectus" at p. 21), Defendants specifically misrepresented that the Minority Shareholders' claims were "without merit" and an attempt to "extort economic benefits from us" (*quoted infra* at 8), despite the fact that the events on which the Final Award was based occurred prior to the IPO.

The Final Award, contrary to the representations in the Prospectus, exposed Su for what he is – an intractable, corporate criminal. *See, e.g.,* Final Award at ¶167 ("the Tribunal is entitled to draw the inference that Su's motive in excluding the Claimants from the [IPO] was to enrich his own position and deprive the Claimants of their rights.").

In a subsequent proceeding brought by Su to set-aside the Final Award, a Hong Kong High Court observed (at ¶75) that Su "has demonstrated little regard for orders made by the courts, and I believe that he will have no hesitation to dissipate and remove the Plaintiffs' assets in order to

frustrate the efforts of any order of any court, and to defeat the Defendants' actions to enforce the Award made against him…. His Dishonest Person Listing is specimen example of his inclinations and propensity. From Su's own evidence, it would appear that he regards truth to be fluid and flexible, to be bended and stretched to fit such case as he sees necessary and convenient to present for his own immediate purpose… [H]e is a totally unreliable witness."

This Court, in a Memorandum Opinion and Order entered May 24, 2019 (ECF No. 99, the "Memorandum Opinion" or "Op."), had dismissed the SAC on grounds, among other things, that: (i) allegedly false statements concerning Su were mere "puffery" on which no reasonable investors was entitled to rely; and (ii) Defendants had no obligation in the Prospectus to disclose the true facts concerning Su's lack of integrity and business failures. *See* Op. at pp. 21-24.

However, the record in the Hong Kong proceedings and subsequent enforcement efforts (in this Court before Judge Daniels (*Fei v. Su*, No. 19-cv-00893-GBD (the "*Fei* Action")), and elsewhere), places Su's character (which was never positive), in an entirely new light. Since Defendants in the Prospectus characterized the Minority Shareholders' claims as "without merit" and an attempt to "extort economic benefits from us" (Prospectus at p. 21), they had an obligation to speak truthfully. *See, e.g., Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 718-19 (S.D.N.Y. 2018) ("the requisite connection triggering a duty to disclose arises … when a defendant makes a statement that can be understood, by a reasonable investor, to deny that the illegal conduct is occurring.").

If the truth had been disclosed, no reasonable investor would have participated in the IPO. Thus, even under the standards articulated by this Court in its Memorandum Opinion, the proposed TAC would withstand a renewed motion to dismiss.

A copy of the proposed TAC is attached as Exhibit A to the Declaration of Robert C. Finkel dated June 14, 2018 ("Finkel Declaration" or "Finkel Decl.").  A black-line comparison of the proposed TAC to the SAC is annexed as Exhibit D to the Finkel Decl.  The Final Award is attached as Exhibit C to the Finkel Declaration.  The Hong Kong High Court's May 15, 2019 Set-Aside Order is annexed as Exhibit D to the Finkel Declaration.

## ARGUMENT

## LEAVE TO AMEND SHOULD BE GRANTED

### A.    Leave to Amend Standards

Federal Rule of Civil Procedure 15(a)(2) permits a plaintiff to amend its complaint "with the opposing party's written consent or the court's leave."  "The court should freely give leave when justices so requires." Fed. R. Civ. P. 15(a)(2).  In *Foman v. Davis*, the U.S. Supreme Court instructed that:

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

371 U.S. 178, 182 (1962); *see also Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir. 1987); *Bekker v. Neuberger Berman Inv. Comm.*, No. 16 CV 6123-LTS, 2019 U.S. Dist. LEXIS 79149 (S.D.N.Y. May 9, 2019); *Park v. FDM Grp, Inc.*, No. 16-CV-1520-LTS, 2018 U.S. Dist. LEXIS 146191 (S.D.N.Y. Aug. 28, 2018) (granting leave to amend).

A motion to amend should be denied only for good reasons such as "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."  *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).  *See also*

*Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93 (2d Cir. 2014) (in the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant or undue prejudice to the opposing party, leave to amend should, as the rules require, be freely given).

  None of the factors cited in *Foman* to justify denial of a motion to amend – due delay, bad faith or dilatory motive, repeated failures to cure pleading deficiencies, futility of amendment, or unfair prejudice to the Defendants – exist in this case.  The Motion to Amend should therefore be granted.

  **B.**   **The Proposed Amendment Is Not Futile**

  Leave to amend should be granted unless amendment would be futile.  Leave to amend may be denied as futile "where the claim or defense to be added has no 'colorable merit.'"  *Ochei v. All/Care Onward Healthcare*, No. 07 Civ. 0968 (PKC), 2009 U.S. Dist. LEXIS 28993, at *42 (S.D.N.Y. Mar. 31, 2009).  In other words, leave to amend may be denied "on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact."  *See AEP Energy Servs., Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010).  An amended complaint will be "futile when it does not contain enough allegations of fact to state a claim for relief that is 'plausible on its face.'"  *Henriquez v. Kelco Landscaping*, 299 F.R.D. 376, 378 (E.D.N.Y. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Hence, the futility of an amendment is assessed under the standard for a Rule 12(b)(6) motion to dismiss.  *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also Esposito v. Deutsche Bank AG*, No. 07 Civ. 6722 (RJS), 2008 U.S. Dist. LEXIS 101460, at *8 (S.D.N.Y. Dec. 16, 2008) (same).

The proposed amendments meet the pleading requirements of a claim for relief under Sections 11 and 15 of the Securities Act of 1933 (15 U.S.C. §§77k and 77o), Sections 10(b) and 20(a) of the Exchange Act of 1934 (15 U.S.C. §§78j and 78t), and SEC Rule 10b-5 (17 C.F.R. 240.10b-5), including any specificity required by Fed. R. Civ. P. 9(b) and the PSLRA.  They contain detailed allegations, supported by the findings of a Tribunal, of serious and egregious conduct, that would clearly be material to an investor deciding whether to invest in the IPO, and plainly undermine and contradict the statements in the Prospectus concerning Su.  Indeed, whereas the Prospectus portrays Su as a great asset to the Company, upon learning the truth, no reasonable investor would want to invest in the Company.

The proposed TAC is not futile as the additional allegations support Plaintiffs' claims of securities law violations.  The Prospectus had represented that:

1. Su was "a successful businessman" and "was the founder of our company and has been our director and executive chairman since October 2009" and "is primarily responsible for our strategic planning, business operation and overall management."  SAC, ¶79.

2. The "industry experience, expertise and contributions of our executive chairman, Mr. Weili Su are essential to our continuing success."  *Id.,* ¶80.

3. "We are led by a highly experienced management team supported by strong, localized execution capabilities across all key functions and locations."  *Id.*, ¶81.

4. Our management team has a broad range of experience, an in-depth understanding of the ever-changing global PV industry, proven market insights and a track record of successful execution. Our senior management has extensive experience in both upstream and downstream PV markets. Our founder and executive chairman, Mr. Weili Su, has over 13 years of business experience in the PV industry. He is a pioneer in the downstream PV market and spearheaded the PV project development business in 2005. *Id.*

The SAC alleged that those statements were false because, among other things, (i) at the time of the IPO, Su had $44 million of unsatisfied civil indebtedness (SAC ¶¶77 and 92), (ii) Su was ordered by the Shanghai First Intermediate People's Court not to spend money on "high value consumptions," not necessary for personal life and work, until he satisfied those judgments (*Id.*

¶93), (iii) Su orchestrated the sale of Sky's common stock in Sky Solar Deutschland GmbH ("Deutschland") to defraud creditors (*Id.* ¶¶94-100), (iv) Su stole corporate opportunities from Deutschland (*Id.* ¶¶101-06), (v) Su procured prostitutes to cause third parties to invest in Sky (*Id.* ¶106), and (vi) Su experienced business reversals in Spain (*Id.* ¶¶142-49).

This Court, however, held that the Prospectus's positive statements concerning Su were mere puffery:

> The general positive statements about Su's professional history and management abilities, such as statements that he was a 'successful businessman,' are at most non-actionable puffery.  [Op. at p. 22.]

The Court separately held that "Nothing in *Fries* provides support for the proposition that there is a duty to disclose negative facts that do not render disclosed statements misleading."  Op. at p. 23.   Specifically, this Court held that Defendants only had an obligation to disclose true facts concerning Su's background "in three circumstances":

> (1) when a corporation puts the reasons for its success at issue, but fails to disclose that a material source of its success is the use of improper or illegal business practices; (2) when a defendant makes a statement that can be understood, by a reasonable investor, to deny that the illegal conduct is occurring; and (3) when a defendant states an opinion that, absent disclosure, misleads investors about material facts underlying that belief.  [Op. at p. 21.]

On June 7, 2019, Plaintiffs filed a motion to reargue that holding.  Among other things, Plaintiffs argued that the Court's Memorandum Opinion overlooked controlling precedents in the Second Circuit.[1]   *Suez Equity Investors, L.P. v. The Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001) concerned facts almost identical to the case at bar.   In *Suez*, the defendants solicited the plaintiffs' investment in securities of SAM Group, while at the same time misrepresenting material

---

[1] The motion for reconsideration inadvertently referenced that the SAC asserted a claim for relief under Section 12(a)(2) of the Securities Act (15 U.S.C. §77l(a)(2)).  No such claim was asserted in the SAC.  Plaintiffs apologize for the error.

facts concerning J. Christopher Mallick, SAM Group's founder, principal executive and controlling shareholders. *Id.* at 93. The Second Circuit, in reversing the District Court, noted that defendants had represented to plaintiffs that they had conducted "extensive due diligence on Mallick before investing in SAM Group and that the investigation had yielding positive comments." *Id.* at 94.

Leaving aside whether *Fries* and *In re Xinhua Fin. Media Ltd. Secs. Litig.*, No. 07 Civ. 3994 (LTS) (AJP), 2009 U.S. Dist. LEXIS 14838, at *16-25 (S.D.N.Y. Feb. 25, 2009) are distinguishable or were correctly decided, plaintiffs submit that the case at bar is controlled by *Suez* and the motion to reargue should be granted.

Separately, however, Plaintiffs move to amend based on newly discovered facts that bring this case squarely within the "three circumstances" set out in *Fries*, even assuming that the Court's Memorandum Opinion was correctly decided.[2] These facts were discovered by plaintiffs based on a review of Sky's 2018 Form 20-F filed on May 15, 2019 with the SEC.[3] Specifically, the 2018 Form 20-F stated that:

> In March 2015, a group of former employees and shareholders of Sky Solar Holdings Co., Ltd commenced an arbitration with the Hong Kong International Arbitration Centre, or HKIAC, against our former CEO and former chairman, Mr. Su, and his wholly-owned subsidiary Flash Bright Power Limited ("Flash Bright") in connection with the restructuring of Sky Solar Holdings Co., Ltd. Sky Solar Holdings Co., Ltd is not a party to the arbitration. Since the commencement of these proceedings, three of the six claimants have withdrawn their claims. In May 2018, an unfavorable arbitral award was granted (the "HKIAC Award"). In January 2019, the claimants applied to the United States District Court Southern District of New York for an order of attachment against the personal property of our former CEO and former chairman Mr. Su, including the ordinary shares and

---

[2] The Memorandum Opinion gave Plaintiffs permission to file a motion for leave to amend the SAC until June 7, 2019. The time to file that motion to amend was subsequently extended by Judge Freeman until June 14, 2019. ECF No. 104.

[3] https://www.sec.gov/Archives/edgar/data/1594124/000110465919029578/0001104659-19-029578-index.htm (last visited June 13, 2019).

7

ADS held by Flash Bright, which are among the subject shares under a stock purchase agreement between, among others, Flash Bright and Japan NK Investment K.K. dated March 1, 2019. The order of attachment was granted by the court on March 19, 2019.  [Sky 2018 Form 20-F at 11.]

Until the Petition was filed in the *Fei* Action in January 2019 and then referenced in the 2018 Form 20-F, the specific information concerning the Arbitration was not publicly available.

The Prospectus (at 21) had referenced that "counsel" for "certain former [Sky] employees" and a "former shareholder" of a predecessor to Sky had "sent letters threatening litigation" and "harassing emails."  However, the Prospectus assured investors of Sky's belief that "these claims are without merit, and that these claimants may be attempting to extort economic benefits from us and our chairman":

> ***We have been, and in the future may be, the target of lawsuits, harassment or other hostile conduct by third parties, including malicious allegations, which could generate adverse publicity and harm our reputation and could adversely affect our business and the trading price of our ADSs.***
>
> We have been, and in the future may be, the target of lawsuits, harassment, or other hostile conduct by third parties. Such conduct has in the past included, and may in the future include, malicious allegations, anonymous or otherwise, regarding our personnel, business, operations, accounting, corporate history, prospects or business ethics. For example, in October 2014, counsel representing certain former employees of Sky Solar Holdings Co., Ltd., a former shareholder of Sky Solar Power Ltd., have sent letters threatening litigation and certain of these claimants have sent harassing emails, short messages and letters to certain of our shareholders, directors and professional advisors alleging that they were deprived of the economic benefits of their holdings in Sky Solar Holdings Co., Ltd. as a result of (i) the Company's failure to provide sufficient advance notice of the restructuring of Sky Solar Holdings Co., Ltd. and the transfer of assets from Sky Solar Holdings Co., Ltd. to the Company, and (ii) Mr. Su's improper use of the proxy that such shareholders had granted him to attend shareholder meetings and vote shares on their behalf. We believe that these claims are without merit, and that these claimants may be attempting to extort economic benefits from us and our chairman. Nevertheless, these allegations could become a significant distraction for our management. It is also possible that any such allegations against us or our chairman or other executives will be publicly disseminated through various media, including without limitation internet chat rooms, blogs, social networks or other websites. Despite our belief that such claims are without merit, if any of these

claimants were to prevail in any claim brought against us or were to publicly disseminate any of these allegations, our reputation, business and the trading price of our ADSs could be adversely affected.

Issues of Su's credibility and the Prospectus's representations, among other things, that Su Su was a "successful businessman" were first addressed in Plaintiff's initial Consolidated Amended Class Action Complaint, filed November 9, 2017, and in the SAC. Based on the record in the *Fei* Action, Plaintiffs propose to amend the SAC as reflected in the proposed TAC to embellish upon those allegations.

The proposed amendments clearly satisfy the second and third standards of *Fries*:

(2) when a defendant makes a statement that can be understood, by a reasonable investor, to deny that the illegal conduct is occurring; and (3) when a defendant states an opinion that, absent disclosure, misleads investors about material facts underlying that belief. [285 F. Supp. 3d at 719.]

The TAC thus fully addresses the Court's holding (Op. at 26) that "Plaintiffs have pointed to no such use of assurances in Sky's Prospectus to conceal known, ongoing ethical violations…."). When the Prospectus represented that Su was a "successful businessman" and made other similar statements concerning Su's credentials and the credentials of members of senior management, and made statements concerning letters and emails from former employees and shareholders, that Defendants characterized as "threatening" and "harassing" and merely seeking to extort money from Su and Sky, the Defendants were required to disclose the truth, that Su was not a successful businessman, but was a crook, and that prior to the IPO he had engaged in efforts to defraud the Minority Shareholders (among others). *See In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381-82 (S.D.N.Y. 2015) (cited Op. at 26: "the statements were made to reassure the public about the company's integrity, while management was aware of corruption within the company.").

9

The proposed amendment is not only relevant to statements concerning Su, but also statements concerning Sky's access to financing, internal controls, and business plan.  It is elementary that any financial institution or other third party considering lending money to Sky or doing business with Sky would first do due diligence on Su.  Contrasting the Prospectus's statements concerning the claims of the Minority Shareholders, to the true facts concerning Su's background, it is not surprising that Sky had difficulty raising money or finding local partners. Thus, in light of the materiality of Sky's need to raise financing, and the unqualified positive statements in the Prospectus and other SEC filings with respect to Sky's management and ability to raise financing, it was materially false and misleading for Defendants to fail to disclose the true facts concerning Su's background.  *See Suez*, 250 F.3d 87, cited *supra*.

The TAC also addresses the Court's comment (Op. at 25 n. 18) that the "Prospectus … does not appear to make … an assertion ['that its internal controls were adequate']."  *See, e.g.* TAC, ¶168 (referencing the creation of an Audit Committee consisting of independent directors that would be "responsible for … reviewing and approving all proposed related party transactions."  Prospectus at 148.  That the Prospectus also cautioned that "these measures may not fully address the material weakness and other control deficiencies in our internal control over financial reporting" (Prospectus at 75), is insufficient to alert investors that the Board's independent directors had been unwilling to, and would continue to be unwilling to, exercise any control over Su.  *Slayton v. Am. Express Co.*, 604 F.3d 758, 772 (2d Cir. 2010) ("To avail themselves of safe harbor protection under the meaningful cautionary language prong, defendants must demonstrate that their cautionary language was not boilerplate and conveyed substantive information.").

The TAC also addresses the Court's holding that statements in the Prospectus were "puffery." *E.g.* Op. at 23. In context, statements such as "proven track record," "successful businessman," and "increasing financing capabilities," greenlights Defendant Roth Capital's *modus operandi* of bringing B and C quality Chinese companies public in the United States. *See, e.g.,* TAC, ¶¶ 42-43, referencing the documentary file "The China Hustle," which profiled Roth Capital's role in bringing Chinese companies public in the United States.

Why – if no reasonable investor would rely on these statements – do they appear repeatedly throughout the Prospectus? Sky was otherwise unknown, and these representatives were the only source of information in the U.S. markets. As recently stated by Chief Judge McMahon, even if arguably puffery when viewed in isolation, "[if] made repeatedly in an effort to reassure the investing public about matters particularly important to the company and investors, those statements may become material to investors." *In re Signet Jewelers Ltd. Sec. Litig.,* No. 16 Civ. 6728 (CM), 2018 U.S. Dist. LEXIS 199809, at *35 (S.D.N.Y. Nov. 26, 2018), *motion for judgment on the pleadings denied*, 2019 U.S. Dist. LEXIS 97959, at *20 (S.D.N.Y. June 11, 2019) ("[m]ateriality depends upon a number of context-specific factors, including specificity, emphasis, and whether certain statements are designed to distinguish the company in some fashion that is meaningful to the investing public.").

Plaintiffs submit that the severity of Su's misconduct, and his significance to the IPO warrant a re-evaluation of each of Plaintiffs' securities claims with the exception of SAC, Sections VI.C.4 (allegations concerning the Japanese Feed-in-Tariff Program), VI.C.5 (allegations concerning Chilean shovel-ready capacity[4]) and VI.C.9 (allegations concerning reasons for

---

[4] Plaintiffs continue to contest Defendants' statements concerning the availability of financing in Chile.

converting to an IPP Business Model).  Those allegations are continued in the TAC to preserve Plaintiffs' appeal rights.

### C.     The Proposed Amendments Do Not Unfairly Prejudice Defendants

Prejudice to the opposing party is "the most important factor" in determining whether leave to amend should be granted or denied.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (citation omitted).  "The party opposing the motion for leave to amend carries the burden of demonstrating that it will be substantially prejudiced by the amendments."  *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 148 (E.D.N.Y. 2007).  Thus, if a set of underlying facts and circumstances supports a plaintiff's proposed new claims, the plaintiff should generally be allowed to test those additional claims "on the merits."  *Hutter v. Countrywide Bank, N.A.*, 41 F. Supp. 3d 363, 371 (S.D.N.Y. 2014).

The Defendants cannot carry their burden here.  In determining whether amendments would be prejudicial to a nonmoving party, courts in the Second Circuit "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993).  Prejudice will generally not be found unless the motion to amend "comes on the eve of trial after many months or years of pre-trial activity," would "cause undue delay in the final disposition of the case" and "entails more than an alternate claim or a change in the allegations of a complaint."  *Care Envtl. Corp. v. M2 Techs. Inc.*, No. 05 CV 1600, 2006 U.S. Dist. LEXIS 55066, at *20 (E.D.N.Y. Aug. 7, 2006) (internal quotations omitted).

12

Here, Plaintiffs have moved expeditiously to allege new facts that weren't previously available to them, and if anything, Defendants "hid the ball" by failing to disclose these *true* facts in the Prospectus or subsequently SEC filings.  Thus, it is not Defendants who can argue prejudice from the amendments.

### D.        The Proposed Amendments Are Timely and Sought in Good Faith

The Second Circuit has recognized that "[m]ere delay … absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  *Fluor*, 654 F.2d at 856.  In other words, the lapse of time between the filing of an original and an amended pleading can never "provide a basis for a district court to deny the right to amend" unless the alleged delay is accompanied by "bad faith or undue prejudice."  *Block*, 988 F.2d at 350 (internal citations and quotations omitted); *see also State Farm*, 246 F.R.D. at 149 (no prejudice from amendment after where "the case is nowhere near resolution" and "significant discovery on the merits has yet to commence.").  The relevant factors "[i]n gauging prejudice … [include] whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute."  *Block*, 988 F.2d at 350.

As described above, no prejudice will result from the filing, and there is no basis for concluding that Plaintiffs substantially delayed the matter.  They have sought amendment expeditiously after the Court's Memorandum Opinion and after first having an opportunity to learn of the new facts.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for leave to amend.

Dated: June 14, 2019
      New York, New York

Respectfully submitted,

**WOLF POPPER LLP**

*/s/ Robert C. Finkel*
Robert C. Finkel
Andrew E. Lencyk
Joshua W. Ruthizer
845 Third Avenue, 12th Floor
New York, New York 10022
Tel: (212) 759-4600
Fax: (212) 486-2093
rfinkel@wolfpopper.com
alencyk@wolfpopper.com
jruthizer@wolfpopper.com

*Attorneys for Plaintiffs and Lead Counsel for the Proposed Class*