UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW BARILLI and RONALD PENA,
Individually and on Behalf of All Others
Similarly Situated,

                Plaintiffs,

     -v-                                No. 17  CV 4572-LTS-DCF

SKY SOLAR HOLDINGS, LTD., WEILI
SU, JIANMIN WANG, YI ZHANG,
XIAOGUANG DUAN, HAO WU,
DONGLIANG LIN, ROTH CAPITAL
PARTNERS, LLC, and NORTHLAND
SECURITIES, INC.,

          Defendants.

---

MEMORANDUM OPINION AND ORDER

      Andrew Barilli and Ronald Pena ("Plaintiffs")  bring this action against Sky Solar

Holdings, Ltd. ("Sky"), Roth Capital Partners, LLC ("Roth"), and Northland Securities, Inc.

(together the "Underwriter Defendants"), Weili Su ("Su"), Jainmin Wang, Yi Zhang, Xiaoguang

Duan, Hao Wu, and Dongliang Lin (collectively, the "Defendants") for violations of section 11

of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77k ("Section 11"), section 15

of the Securities Act, 15 U.S.C. § 77o ("Section 15"), section 10(b) of the Securities Exchange

Act of 1934 (the "Exchange Act"), 15 U.S.C. §78j(b) ("Section 10(b)") and 17 C.F.R. § 240.10b-

5 ("Rule 10b-5"), and section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ("Section 20(a)").

(Second Consolidated Amended Class Action Complaint (the "SAC"), Docket Entry No. 56.)

On May 23, 2019, the Court granted Defendants' motion to dismiss the complaint for failure to

state a claim upon which relief can be granted (Docket Entry No. 99 (The "MTD Opinion")) and,

on December 2, 2019, denied Plaintiffs' motion to reconsider that decision.  (Docket Entry No. 125.)  Plaintiffs now move pursuant to Federal Rule of Civil Procedure 15(a)(2) to amend the SAC.  (Docket Entry No. 108.)

The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331 and 15 U.S.C. sections 77v and 78aa.

The Court has considered the parties' submissions carefully and, for the following reasons, denies the motion in its entirety.

BACKGROUND

The Court presumes the parties' familiarity with the factual background of this case as set forth in the MTD Opinion, and summarizes here only the facts that are newly alleged in the Proposed Third Amended Complaint (Declaration in Support, Exh. 1 ("TAC"), Docket Entry No. 110), which are taken as true for the purposes of the instant motion practice.

In the TAC, Plaintiffs seek to add allegations based on an Award issued on May 28, 2018, in an arbitration proceeding in Hong Kong (the "Hong Kong Arbitration").  The Hong Kong Arbitration tribunal awarded the claimants therein damages for breach by defendant Su of a 2010 Shareholders Agreement in connection with a September 12, 2013, share swap (the "2013 Share Swap") in which shareholders owning 94.8% of the shares in Sky Solar Holdings Co. Ltd. ("SSHCL") exchanged their interest in SSHCL for an equivalent equity interest in Sky Power Group Limited ("SPGL"), a wholly owned subsidiary of SSHCL.  (TAC, at ¶¶ 72-85; Docket Entry No. 110, Exh. C ("the Award"), at ¶¶ 106-109, 158.)  Defendant Sky was a wholly owned subsidiary of SPGL.  (Award, at ¶ 107.)  The tribunal found that the "effect of the 2013 Share Swap was to transfer all of [SSHCL's] valuable assets to a new vehicle," and that Sky was

therefore "essentially the same entity as SSHCL."  (Award, at ¶¶ 158-160; TAC, at ¶ 81.)  The

relevant provision of the Shareholders Agreement had required Su to use "commercially

reasonable best efforts to effect" an IPO of SSHCL.  (Award, at ¶ 153.)

   The Award states that Su's justification for the 2013 Share Swap was "the

implementation of an IPP model" (TAC, at ¶ 81) and finds that Su provided no evidence to

support that contention (TAC, at ¶ 81) and never appeared at the arbitration hearing (TAC, at ¶

84.  The Hong Kong tribunal found that Su's explanation for the 2013 Share Swap was not

"credible or convincing," as there "was nothing in the SEC Prospectus to indicate that [moving

to an IPP model] was the motivation behind the restructure."  (TAC, at ¶ 81.)  The tribunal

considered a text message from Su to one of the minority shareholders in which he stated that the

equity incentives belonging to that shareholder were "my arrangements alon[e]! I have the right

to give them, and I also have the right to revoke them! This is nobody else's business!"  (TAC, at

¶ 84.)  The tribunal concluded that Su "viewed [SSHCL] and the shares owned by [the minority

shareholder] in [SSHCL] as his own private property, which he could deal with as he saw fit."

(TAC, at ¶ 85.)  The tribunal further concluded that Su's "motive in excluding the Claimants

from the 2013 Share Swap and the 2014 [Sky] IPO was to enrich his own position and deprive

the Claimants of their rights."  (TAC, at ¶ 81.)  Accordingly, the tribunal found that Su violated

the Shareholders Agreement by failing to use commercially reasonable best efforts to effect an

IPO of SSHCL, and instead executing the 2013 Share Swap and Sky IPO.  (Award, at ¶ 168.)

   The claims asserted in the Hong Kong Arbitration were disclosed in the

Prospectus.  (TAC, at ¶¶ 141-46.)  According to Plaintiffs, the Award demonstrates that

statements in the Prospectus that Defendants believed the claims were "without merit" and "may

be attempting to extort economic benefits" were misrepresentations.  (TAC, at ¶¶ 108, 141-45.)

Plaintiffs further allege that "[n]o reasonable person, with knowledge of the true facts, after exercising due diligence, could hold the belief . . . that the allegations against Su were "without merit" or an attempt to "extort" economic benefits."  (Id., at ¶ 371; see also id. ¶¶ 403-06.)  The TAC does not proffer any new factual allegations that Plaintiffs suffered financial losses.  (See generally TAC.)

Finally, the TAC includes certain minor and, for the most part, conclusory allegations in support of Plaintiffs' claims related to other alleged misstatements in the Prospectus regarding Sky's access to financing.  (See e.g., TAC, at ¶ 146 ("[t]he claims against Su . . . made it exceedingly unlikely that financial sources . . . would want to do business with Su"); ¶ 276 ("[a]ny institutional lender that would consider doing business with [Sky] would do due diligence on Su and… becom[e] aware of Su's… misconduct with respect to the Minority Shareholders… and would be unwilling to lend to [Sky].")

## DISCUSSION

Rule 15(a) of the Federal Rules of Civil Procedure provides that a "court should freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nonetheless, a motion to amend should be denied "if there is an 'apparent or declared reason – such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'"  Dluhos v. Floating and Abandoned Vessel, Known as "New York," 162 F.3d 63, 69 (2d Cir. 1998) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  Lucente v. Int'l Bus.

Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citing Dougherty v. N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)).

Newly Alleged Securities Act Claim

Plaintiffs propose to amend the SAC's Securities Act claims based on statements in the Prospectus that Defendants believed that the claims asserted in the Hong Kong Arbitration were "without merit" and "may be attempting to extort economic benefits. (TAC, at ¶¶ 5, 8, 108, 142.) The TAC is the first time that Plaintiffs have alleged that those statements were materially false or misleading. As the Court noted in the MTD Opinion, to permit Plaintiffs to introduce new grounds for liability under the Securities Act based on statements which were not alleged to be false until after the expiration of three years would undermine Section 13's purpose and abridge Defendants' right to be free from liability after the repose period lapsed. (Id. at 44.) Plaintiffs' arguments to the contrary are substantially duplicative of the arguments presented in their motion for reconsideration, which the Court denied. (See Docket Entry No. 125.) Accordingly, because the TAC's allegations were made more than three years after the security was bona fide offered to the public, Securities Act claims based on those statements are barred by the statute of repose.[1]

Newly Alleged Exchange Act Claim

Plaintiffs have proposed amendments to their Exchange Act claims based on the statements in the Prospectus that the Hong Kong Arbitration claims were "without merit" and

---

[1]     To the extent Plaintiff seeks to assert a Securities Act claim based on the allegation that "the Prospectus misrepresented that banks and other financial institutions had 'confidence' in Sky" (TAC, at ¶ 273), that claim is also barred by the statute of repose.

"may be attempting to extort economic benefits."  (See TAC, at ¶¶ 348, 358, 369, 371.)  The

Court therefore considers whether the allegations in the TAC establish "(1) a [false or

misleading] material misrepresentation or omission by the defendant; (2) scienter; (3) a

connection between the misrepresentation or omission and the purchase or sale of a security; (4)

reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."

Matrixx Initiatives, Inc. v. Siracusano, 563 U.S 27, 37-38 (2011).

        The statement in the Prospectus that "[w]e believe that [the claims asserted in the

Hong Kong Arbitration] are without merit, and that these claimants may be attempting to extort

economic benefits from us" is a quintessential statement of opinion.  See Omnicare, Inc. v.

Laborers Dist. Council Constr. Indus. Pension Fund, 575 U.S. 175, 188 (2015) (providing an

example of "an unadorned statement of opinion about legal compliance: 'We believe our conduct

is lawful.'")  In order to state a claim based on false or misleading statements of opinion, which

are otherwise not actionable, Plaintiffs must allege that "the speaker d[id] not hold the belief

professed . . . or the speaker omit[ed] information that makes the statement misleading to a

reasonable investor."  Martin v. Quartermain, 732 Fed. App'x 37, 40 (2d Cir. 2018) (internal

citations omitted).  Plaintiffs argue, and allege facts from which the Court may infer, that Su did

not believe that the claims asserted in the Hong Kong Arbitration were meritless.  The Hong

Kong Arbitration tribunal found that Su's "primary explanation for the 2013 Share Swap [was]

the implementation of an IPP model," but that the explanation was not "credible or convincing"

as there "was nothing in the SEC Prospectus to indicate that [that] was the motivation behind the

restructure."  (TAC, at ¶ 81.)  Su never appeared at the Hong Kong Arbitration to defend

himself, and no contradictory documentary evidence was provided.  (Id.)  The tribunal concluded

that Su's "motive in excluding the Claimants from the 2013 Share Swap and the 2014 [Sky] IPO

was to enrich his own position and deprive the Claimants of their rights."  (Id.)  Taking these allegations as true and drawing all inferences in favor of Plaintiffs, the Court infers that Su actually believed that the claims asserted in the Hong Kong Arbitration were meritorious.  As Su was a signatory to the Prospectus, Plaintiffs have alleged a false statement of opinion. Consequently, Plaintiffs have also alleged scienter sufficiently.  See Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004) (In cases alleging a false statement of opinion, "the falsity and scienter requirements are essentially identical… [because] a material misstatement of opinion is by its nature a false statement, not about the objective world, but about the defendant's own belief.") (internal citations omitted).

        Plaintiffs have, however, failed to allege facts from which the Court may infer loss causation related to this misrepresentation.  It is plaintiffs' "burden [to prove] that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff[s] seek[] to recover damages."  15 U.S.C.S. § 78u–4(b)(4) (LexisNexis 2018).  Thus, Plaintiffs must allege "that the subject of the fraudulent statement or omission was the cause of the actual loss suffered."  Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001); see also Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 173 (2d Cir. 2005) (plaintiffs must allege "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security.")  Plaintiffs argue generally that "Sky's business suffered from its association with defendant Su" throughout the class period, and specifically that Sky's ADSs fell by $0.87 per ADS in June 2017 when the market learned that Su "had entered into related-party transactions without obtaining Board approval and had stolen $15 million from Sky."  (Docket Entry No. 122 ("Reply Mem."), at 10.)  However, not only did the 2018 Hong Kong Arbitration Award post-date the 2017 drop in Sky's ADS price (Docket

Entry No. 109 ("Pl. Mem."), at 8), but the public disclosure of Su's conduct during the 2013

Share Swap is not alleged to have caused the 2017 drop in Sky's ADS price in any way.  Instead,

Plaintiffs appear to argue that the concealed subject of the fraudulent statement was the fact that

Su was the type of CEO who engaged in misconduct.  Plaintiffs argue that any loss caused by the

public revelation of Su's character, whether it be disclosure of misconduct related to the 2013

Share Swap or not, can establish loss causation.  Plaintiffs describe the fraudulent statement too

broadly; the subject of the statement that "[w]e believe that [the claims asserted in the Hong

Kong Arbitration] are without merit" is simply whether those claims had merit.  Plaintiffs have

not alleged that the public disclosure of the merit of those claims caused the loss for which they

seek to recover damages.  Accordingly, Plaintiffs have not alleged facts from which the Court

may infer loss causation, and it would be futile to permit Plaintiffs to amend the complaint to add

these allegations in support of their Exchange Act claims.


Amended Securities Act Claims

Plaintiffs argue that the newly alleged facts regarding the success of some of the

claims in the Hong Kong Arbitration should enable them to revive their previously dismissed

claims[2] based on alleged misstatements about (1) Su's business acumen and role in Sky's

success, (2) Sky's adoption of internal controls, and (3) Sky's access to financing.[3]

---

[2]    The Court notes that Plaintiffs style their primary cause of action as a Section 11 claim, but mainly allege misrepresentations in Sky's Prospectus, which are actionable under Section 12(a)(2).

[3]    Although Plaintiffs also propose certain minor amendments related to other alleged misstatements, Plaintiffs concede that those amendments "are not significant in light of the Court's prior dismissal" and are proposed solely to "maintain their appeal rights and motion for reconsideration, with respect to these allegations."  (Reply Mem., at 7 n.9; see generally TAC.)

With respect to statements that Su was a "successful businessman" and "essential to [Sky's] continuing success", Plaintiffs argue that Su's misconduct in connection with the 2013 Share Swap establishes that he was not, in fact, a successful businessman.  (TAC, at ¶ 148.) Omissions concerning "corporate mismanagement or uncharged criminal conduct are not actionable unless the non-disclosures render other statements by defendants misleading."  Fries v. N. Oil & Gas, Inc., 285 F. Supp. 3d 706, 718-19 (S.D.N.Y. 2018) (collecting cases).  Such omissions become materially misleading: "(1) when a corporation puts the reasons for its success at issue, but fails to disclose that a material source of its success is the use of improper or illegal business practices; (2) when a defendant makes a statement that can be understood, by a reasonable investor, to deny that the illegal conduct is occurring; and (3) when a defendant states an opinion that, absent disclosure, misleads investors about material facts underlying that belief." In re Virtus Inv. Partners, Inc., 195 F. Supp. 3d 528, 536 (S.D.N.Y. 2016) (quoting Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC, 164 F. Supp. 3d 568, 581-82 (S.D.N.Y. 2016)) (internal quotation marks omitted).  Plaintiffs argue that the Prospectus omitted facts demonstrating that Su had "engaged in efforts to defraud Minority Shareholders" and assert that these allegations satisfy the second and third elements of the Fries standard.  (Pl. Mem., at 9.)  With regard to the second Fries element, the TAC alleges that Su's misconduct related to the 2013 Share Swap concluded before the statements in the prospectus were made.  (Award, at ¶¶ 109, 158.)  These allegations thus do not satisfy the second Fries element, which requires that the statement deny known, ongoing violations.  See In re Petrobras Sec. Litig., 116 F. Supp. 3d 368, 381-82 (S.D.N.Y. 2015).  Furthermore, these allegations do not satisfy the third Fries element because the statement that Su was a "successful businessman" is not a statement of opinion, but a

statement of fact.  See Omnicare, 575 U.S. at 183 ("a statement of fact… expresses certainty about a thing, whereas a statement of opinion… does not").

Plaintiffs argue that Sky put the reason for its success at issue but failed "to disclose that a material source of its success is the use of improper or illegal business practices." In re Virtus Inv. Partners, Inc., 195 F. Supp. 3d at 536.  Specifically, the TAC includes allegations that all of Sky's assets were acquired in the 2013 Share Swap from SSHCL and that this transfer of assets violated the Shareholders Agreement by excluding the SSHCL shareholders from Sky's IPO.  (TAC, at ¶ 79; Award, at ¶¶ 159, 160, 161, 168.)  From these facts, Plaintiffs would have the Court infer that a "source" of Sky's success was Su's breach of the Shareholders Agreement, and that Sky's failure to disclose that misconduct in the Prospectus materially misled investors. [4]

The Prospectus did put the reason for Sky's previous success at issue by stating that Su would be "essential to [Sky's] continuing success."  (TAC, at ¶ 113.)  However, the finding of the Hong Kong Arbitration tribunal that the 2013 Share Swap was improper as to parties to the Shareholders Agreement is insufficient to support an inference that the business activities that had garnered success for SSHCL in the past were improper, or that Su would not be essential to Sky's continued success going forward.  Cf. In re Van der Moolen Holdings N.V. Securities Litigation, 405 F. Supp. 2d 388, 401 (S.D.N.Y. 2005) (finding defendant's statement misleading where it failed to disclose that "revenue had been generated, at least in part, by trading practices that violated NYSE rules") (emphasis added).  Courts have found improper

---

[4]        While "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing," City of Pontiac Policemen's and Firemen's Retirement System v. UBS AG, 752 F.3d 173, 184 (2d Cir. 2014) (citation omitted), companies do have a duty to disclose such wrongdoing when its omission would "render other statements by defendants misleading."  Fries, 285 F. Supp. 3d at 719.

business practices to be a "material source" of assets and success where the revenue or value

extolled by the defendant only existed because of the improper business practice.  See, e.g., In re

Van der Moolen Holdings N.V., 405 F. Supp. 2d at 401 (finding liability where defendant

corporation failed to disclose that the "true source" of its revenue was illegally trading ahead of

its clients); In re Virtus Inv. Partners, Inc., 195 F. Supp. 3d at 536 (finding liability where

defendant failed to disclose that certain returns were based on hypothetical back testing rather

than actual asset management); Gagnon v. Alkermes PLC, 368 F. Supp. 3d 750, 768-69

(S.D.N.Y. 2019) (finding liability where defendant failed to disclose that growth of net sales of

its opioid dependence medication grew in part as a result of "deceptive marketing and lobbying

tactics"); In re Henry Schein, Inc., No. 18-CIV-1428 (MKB), 2019 WL 8638851, at *15

(S.D.N.Y. Sept. 27, 2019) (finding liability where defendant omitted "a material basis for the

company's achievements – [defendant's] alleged collusion with its competitors . . . to fix prices

and margins").  Here, Plaintiffs do not allege that the assets transferred from SSHCL to Sky were

the products of illegal or improper business practices, and therefore the TAC does not show that

a material source of those assets was undisclosed misconduct.  Accordingly, Plaintiffs have not

alleged facts which, if proven, establish that Defendants omitted information regarding a material

source of Sky's success that was necessary to make the statement that Su would be essential to

Sky's continuing success not misleading.[5]

Plaintiffs also allege that the "omission of Su's past misconduct presented a risk,

known to Defendants, that rendered the statements about the effectiveness of [Sky's] internal

---

[5]     Nowhere in the TAC do Plaintiffs allege facts which would establish that Su has never
had any legitimate success in business or that he lacked the ability to contribute to Sky's
success in the future.  See generally TAC.  Nor have Plaintiffs alleged facts which
undermine the Court's previous holding that the statement that Su was a successful
businessman was "at most non-actionable puffery."  (MTD Opinion, at 22.)

controls misleading." (TAC, at ¶ 10.)  In the MTD Opinion, the Court held that "statements regarding the introduction of internal controls do not . . . constitute assertions that the controls are adequate." (MTD Opinion, at 25.)  The Court further held that "the disclosure of Su's past misdeeds could not have significantly altered the relevant mix of information about the adequacy of such controls." (MTD Opinion, at 25-26.)  The TAC proffers an allegation of further misconduct by Su that predated the introduction of the internal controls.  Even with this additional information, the disclosure of the prior misdeeds would not have altered significantly the total mix of information about the internal controls.  Nor is Plaintiffs' argument that the language in the prospectus, which warned investors that the internal controls were and would continue to be weak, was "insufficient to alert investors that the Board's independent directors had been unwilling to, and would continue to be unwilling to, exercise any control over Su" (Pl. Mem., at 10) supported by factual allegations in the TAC; indeed, the TAC does not proffer this conclusory proposition. <u>See generally</u> TAC.  Plaintiffs do not explain how the statements are misleading in light of the facts that (1) the Prospectus disclosed certain weaknesses, as well as a risk of continued weaknesses, and (2) the introduction of internal controls postdated the alleged misconduct challenged in the Hong Kong Arbitration.

Plaintiffs argue that the allegations in the TAC are sufficient to revive their claim based on from statements concerning Sky's access to financing. (Pl. Mem., at 9.)  Specifically, the TAC alleges that "[a]ny institutional lender that would consider doing business with [Sky] would do due diligence on Su and… becom[e] aware of Su's… misconduct with respect to the Minority Shareholders… and would be unwilling to lend to [Sky]." (TAC, at ¶ 276.)  The TAC also alleges that the "claims against Su and [Sk]y by the Minority Shareholders made it exceedingly unlikely that financial sources and business partners would want to do business with

Su." (TAC, at ¶ 146.) Plaintiffs allege no facts in support of these conclusory propositions in the TAC, and such speculation does nothing to alter the Court's conclusion that "Sky's vague and optimistic statements about its present financing relationships were puffery upon which no reasonable investor would rely." (MTD Opinion, at 38-39.) Nor do those allegations disturb the Court's holding that, to the extent such statements were forward-looking, they were accompanied by cautionary language in the Prospectus which was "closely tied" to the risks posed by a potentially successful claim against Sky. (Id., at 38.) Accordingly, none of the allegations in the TAC is sufficient to revive any of the claims dismissed in the MTD Opinion and leave to amend would be futile.

C<small>ONCLUSION</small>

For the foregoing reasons, Plaintiffs' motion to amend the Second Amended Complaint is denied in its entirety and the case is dismissed. The Clerk of Court is respectfully directed to enter judgment dismissing the Second Amended Complaint and close this case.

This Memorandum Opinion and Order resolves Docket Entry Number 108.

SO ORDERED.

Dated: New York, New York
         June 1, 2020

  /s/ Laura Taylor Swain
   LAURA TAYLOR SWAIN
   United States District Judge